WEST COAST INDUSTRIES, INC., A DIVISION OF WINER INDUSTRIES, INC. AND M.I.N.S.A., PLAINTIFFS *v.* UNITED STATES, DEFENDANT

Court No. 81-5-00599

(Dated March 18, 1982)

RICHARDSON, *Judge:* In this action brought by plaintiffs (importer and exporter respectively) pursuant to 19 U.S.C.§ 1581(c) for a limited review of an affirmative countervailing duty order made by the International Trade Administration of the Department of Commerce ["Commerce"] to the extent that the order failed to exclude plaintiff Manufacturas Industriales de Nogales, S.A. ["M.I.N.S.A."] from its operation, the defendant has moved for a protective order barring disclosure to plaintiffs of all or part of some 17 documents comprising part of the administrative record and identified as documents numbered 1, 25, 35A, 57, 58A, 64, 70, 76, 77, 79–81, 83, 85, 88, 90, and 99. And plaintiffs have cross-moved for a protective order granting access to plaintiffs to the same documents or parts thereof as are the subject of defendant's motion, with the exception of document numbered 58A which they concede to be nondiscoverable.

It is admitted in the pleadings that the Mexican tax rebate certificate program ["CEDI"] was found by Commerce to constitute a subsidy within the meaning of 19 U.S.C. § 1303, and that the amount of the subsidy on exports of leather wearing apparel from Mexico to the United States was 5.2 *per centum ad valorem.* Plaintiff West Coast Industries, Inc. is an importer and plaintiff M.I.N.S.A. an exporter of leather wearing apparel of Mexican manufacture. And the disputed documents consist of internal communications prepared by Department of Commerce or Department of State staff members more or less contemporaneously with the countervailing duty investigation conducted by Commerce in connection with the exportation of leather wearing apparel from Mexico to the United States, and covering a period between 1979 and 1981.

In its moving papers defendant contends that the disputed documents are privileged documents, were treated as such in the administrative proceedings, and urge that the same status be accorded these documents before the court, citing 19 U.S.C. § 1516a(b)(2)(B) and 28 U.S.C. § 2635(b)(2). Defendant further contends that disclosure of the contents of these documents would not aid plaintiffs in the prosecution of this action, the object of which action defendant perceives to be addressed to the insufficiency of the responses of the Mexican government to Commerce's request for information as to how the Mexican subsidy program functioned [noting the fact of the Mexican government's opposition to the re-

lease of the identity of exporters not receiving CEDIs as only fueling the mystery of its subsidy program.]

However, in the complaint plaintiffs espouse an even narrower object of the instant action, namely, a judicial determination exempting the exporter M.I.N.S.A. from Commerce's countervailing duty order as well as granting plaintiffs auxiliary relief flowing from such a judicial determination, by reason of what plaintiffs perceive to be Commerce's error in not excluding M.I.N.S.A. from the countervailing duty order. And, in furtherance of this objective, plaintiff, in its cross-moving papers, seeks disclosure of these privileged documents to ascertain if Commerce's alleged failure to exclude M.I.N.S.A. from this order was based upon the attainment of some *policy objective* rather than upon *administrative interpretation* of United States countervailing duty law and regulations— calling attention to M.I.N.S.A.'s application to Commerce for exclusionary treatment, and also to the fact that even the defendant acknowleged the fact that an exporter of leather wearing apparel from Mexico must take such a step in order to be exculpated from operation of Commerce's order. [Answer, ¶15]

Even as to documents accorded a privileged or confidential status in the administrative proceeding, it is to be noted that 19 U.S.C. § 1516a(b)(2)(B) and 28 U.S.C. § 2635(b)(2) also authorize the court to examine the documents *in camera,* and where appropriate, to provide for their disclosure under protective order. Indeed, the rule could not be otherwise, if judicial review on the administrative record is to be viewed as the meaningful substitute for *de novo* consideration that the Congress intended. See: H. Rept. No. 96–317 to accompany H.R. 4537, page 181, 96th Cong. 1st Sess. (July 3, 1979). In this case a balancing of the needs of the plaintiffs in ascertaining the existence of information pertinent to the case against the defendant's desire to preserve the documents inviolate compels just such an *in camera* examination of the disputed documents which the court forthwith undertakes to do.

Aside from the difficulty encountered by the court in attempting to reconcile plaintiffs' complaint for plenary remedial relief to the constraints of a section 1516a review proceeding, the court's more immediate concern, for purposes of the instant motions, is as to the relevancy of the disputed documents toward attainment of the principal object of the action, as the court perceives the action, namely, a judicial determination as to whether Commerce had any obligation to exclude plaintiff M.I.N.S.A. from the operation of its final affirmative countervailing duty order.

Commerce, acting under authority given it in 5 U.S.C. § 301, and the Trade Agreements Act of 1979, Pub. L. 96–39, section 3(b), 93 Stat. 148, adopted numerous regulations to deal with its newly acquired jurisdiction in countervailing duty proceedings, among which is 19 CFR § 355.38. Section 355.38 reads:

> Any firm which does not benefit from a subsidy alleged or found to have been granted to other firms producing or exporting the merchandise subject to the investigation shall, on timely application therefor, be excluded from a Countervailing Duty Order. An application shall be considered timely if made within 30 days after publication of a "Notice of Initiation of Countervailing Duty Investigation." The name of any such firm which is determined to have satisfied the requirements for exclusion will be published in the Federal Register.

In the pleading before the court plaintiffs have alleged [Complaint, ¶3], and defendant has admitted [Answer, ¶3], that notice of initiation of the subject countervailing duty investigation was published in the Federal Register on November 12, 1980 [45 FR 74743]. Moreover, plaintiffs have alleged [Complaint, ¶5], and defendant has called attention to the administrative record [Answer, ¶5—Document No. 73, dated March 9, 1981, of the INDEX FOR ADMINISTRATIVE RECORD] wherein it is indicated that plaintiffs made application to Commerce on March 9, 1981 (considerably beyond the 30 days from November 12, 1980, the date within which plaintiff was permitted to file), for exclusion of M.I.N.S.A. from Commerce's final affirmative countervailing duty order.

After careful examination *in camera* of the disputed documents against the factual background noted herein, the court finds that not only do these documents have no relevancy to plaintiffs' application for exclusionary treatment with respect to Commerce's countervailing duty order, but more importantly, it is clearly unnecessary for plaintiffs to look to these documents in order to ascertain why Commerce declined to consider their application for exclusionary treatment. The record itself plainly shows that the application was made *too late* to impose on Commerce any obligation to examine M.I.N.S.A.'s operations during the course of its *investigation* as contemplated by 19 C.F.R. § 355.38.

Indeed, the section analysis of the regulation indicates that the investigatory stage of Commerce's proceedings is critical to consideration of applications for exclusionary treatment (45 FR 4936, January 22, 1980). Thus, the analysis states:

> 25. *Section 355.38 Effect on Firms Not Benefitting From Subsidy.* Conflicting comments were received pertaining to this section; some recommended that exclusion be automatic; others that it be discretionary. Practical administrative considerations dictate that a firm which although potentially subject to an order, has not itself been investigated, should bear the burden of making application for exclusion and supplying the necessary information. Those firms which are investigated will automatically be excluded if exclusion is appropriate. Where firms are excluded, however, the regulations provide for publication of the name of any firm so excluded.
> Ordinarily, firms wishing to be considered for exclusion from any possible affirmative determination should submit an appli-

cation for exclusion, together with all necessary supporting documentation, no later than 30 days after the date of publicaton of the notice of Initiation of Countervailing Duty Investigation.

Inasmuch as the record before the court indicates the lack of need on plaintiffs' part for the disputed documents for the prosecution of this action, it follows that defendant's desire for preserving the inviolate status of these documents easily prevails. In so finding, however, the court makes no determination with respect to the discoverable status of these documents beyond the limits of this action, bearing in mind the fact that liquidation of entries of leather wearing apparel from Mexico appears to have been suspended, and that identification of exporters of such merchandise from Mexico who benefit from the declared subsidy has yet to be made by the appropriate customs officials.

For the reasons stated, defendant's motion is granted and plaintiffs' cross-motion is denied.